PERROW v. SAN ANTONIO & A. P. RY. CO.
(No. 5484.)

(Court of Civil Appeals of Texas. Austin. Dec. 15, 1915.)

1. MUNICIPAL CORPORATIONS ⚎654—PUBLIC ALLEYS—PRESCRIPTION.

In a suit to remove a cloud from title to a strip of land, evidence *held* to warrant a finding that the land had become a public alley by prescription.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1428; Dec. Dig. ⚎654.]

2. ADVERSE POSSESSION ⚎45—PRESCRIPTION —RUNNING OF STATUTE.

Where, during the life of an owner who was laboring under no disability, prescriptive use of land began, the fact of an intervening disability will not defeat the prescriptive right.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 232–254; Dec. Dig. ⚎45.]

3. DEDICATION ⚎18—DEEDS.

Where a vendor of land agrees with the purchaser that it is bounded by a street or alley, such purchaser as against the vendor and those taking with notice, has an easement in the property represented as a street or alley.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 33–36; Dec. Dig. ⚎18.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

On motion for rehearing. Rehearing denied.

For former opinion, see 178 S. W. 973.

Sleeper, Boynton & Kendall, of Waco, for appellant. R. J. Boyle, of San Antonio, and Neff & Taylor, of Waco, for appellee.

KEY, C. J. The motion for rehearing challenges the correctness of the statement in our former opinion that the proof shows that the land upon which the alley in question is located was originally owned by Patrick and Elizabeth Burke, who are common source of title, etc., the contention being that the undisputed proof shows that at the time appellant and appellee acquired their rights the strip of land in controversy belonged to the estate of C. R. Burke, deceased. The latter contention may be correct, but a fair construction of the testimony given by J. J. Burke and the witness J. F. Hopkins, whose testimony appears in the statement of facts

on pages 129 and 130 in the form of an affidavit, supports our statement that the strip of land in controversy formerly belonged to Patrick Burke and Elizabeth Burke, and that their heirs were T. W., C. R., and J. J. Burke. The testimony referred to shows that the former died about 10 years, and the latter about 8 years, before this case was tried in the court below; that they had only three children, who were J. J., C. R., and T. W. Burke; that T. W. Burke died several years ago, leaving a wife and three minor children; that C. R. Burke died during the year 1910; that he was never married, and left as his only heirs J. J. Burke and the heirs of T. W. Burke. It was also shown that Mary K. Burke, the surviving wife of T. W. Burke, was the duly qualified guardian of the minor children of T. W. Burke, and that J. J. Potts was the duly qualified administrator of the estate of C. R. Burke; that in 1885 or 1886 Patrick and Elizabeth Burke bought from different owners certain small tracts of land contiguous to each other, and that they comprised what has since been known as the Burke property in the city of Waco. The proof shows that there was one house upon the Burke property, when they first bought it, which they at once took possession of, and used it both as a dwelling and storehouse; that thereafter Patrick Burke made various improvements upon the Burke property, consisting in part of small dwelling houses which he rented to colored people; that within 5 or 6 years after acquiring the the property Patrick Burke established what the witness J. J. Burke described as a driveway to and from his tenant houses, and the driveway referred to constitutes the alley, which the jury found had been used by the public for more than 20 years, and which the judgment of the court decreed to be a public alley.

The proof shows that in January, 1911, appellee bought a portion of the original Burke property, and holds title thereto under deeds made by J. J. Potts as administrator of the estate of C. R. Burke, deceased, Mary Burke, guardian of the estate of the minor heirs of T. W. Burke, and also acting for herself individually, and J. J. Burke. The deeds referred to, in describing the property conveyed, call for the south line of the alley in controversy as one of the boundaries. On the same day these deeds were executed the same grantors executed deeds conveying the remainder of the Burke property to appellant, and described the same as adjoining and bounded by the land conveyed to appellee, but these deeds do not mention the alley. However, the report of J. J. Potts, as administrator, showing that he had made the two sales referred to and in describing the sale made to appellant, states one of the boundary lines as follows: "Thence north 45 west, 80 feet to corner on south line of alley." The probate court approved that report, and ordered the adminis-

trator to make deeds to appellant and appellee in accordance therewith. Furthermore, the deed made by J. J. Potts, as administrator, to appellee, in addition to calling for the alley, and giving other boundaries of the property conveyed, contains this language:

"For further and more particular description of the land herein conveyed, attention is called to the attached blueprint, which is hereby made a part of this conveyance."

The blueprint referred to is not incorporated in the statement of facts, but the testimony of more than one witness shows that it was a plat on which the alley in question was delineated; and the deeds from J. J. Burke and Mary Burke for herself and as guardian of her minor children, in describing the property conveyed to appellee, refer for further description to the blueprint attached to the deed of J. J. Potts, administrator, conveying the same land to appellee. Attention is also called to the fact that in the deeds executed by J. J. Burke to the respective parties, he is described as one of the heirs of Patrick and Elizabeth Burke and C. R. Burke, and after describing the property in the deed to appellant, the deed recites:

"The land here conveyed being my entire share and interest in the above-described tract of land as an heir of Patrick and Elizabeth Burke and of C. R. Burke, all deceased."

The foregoing facts tend to support the statement in our former opinion as to common source of title in the sense that each party holds title to a portion of certain real estate which formerly belonged to Patrick and Elizabeth Burke, and that is the sense in which we used the term "common source of title" in that opinion. We observe, however, that it is alleged in appellant's petition, and conceded in appellee's answer, that the strip of land now in litigation belonged to the estate of C. R. Burke at the time these litigants acquired their respective rights; but that fact is unimportant in passing upon the question of prescription.

[1] In view of the facts above recited, in connection with the facts stated in our former opinion, we adhere to our holding that the verdict of the jury sustains the judgment of the court upon the theory of prescription, if not upon any other theory.

[2] In our former opinion nothing was said concerning appellant's contention that the judgment could not be supported on the doctrine of prescription, because it was not shown that the property was not owned during the prescriptive period by some person laboring under disabilities, such as minority; and, as that contention is stressed in the motion for rehearing, we deem it proper to say that, conceding the correctness of the proposition of law insisted upon, we do not think it affords grounds for reversal of this case, for the reason that the undisputed proof shows that the use of the alley by the public not only commenced during the lifetime of Patrick Burke, who was the owner of the property and labored under no disability, but

that he lived long enough for such adverse user to ripen into a prescriptive title. However, like limitation, the rule is that an intervening disability, not existing at the beginning of the period of prescription, will not defeat the prescriptive right. Elliott on Roads and Streets, p. 139. At the time of the beginning of the period of prescription, the land was the community property of Patrick Burke and his wife, and as he was laboring under no disability, if the title had subsequently passed to one subject to such disability, that fact would not have interrupted prescription. But no such transfer of title was shown, and therefore it is fair to presume that C. R. Burke acquired exclusive ownership of the property in a settlement and distribution of the estates of his father and mother, against whom prescription had already run before their deaths.

We also note the contention in appellant's motion to the effect that the excerpt in our former opinion from appellee's brief, in so far as it attempted to state the testimony given by J. J. Potts, was not his testimony, but was an affidavit which he had formerly made, and which was offered in evidence to contradict and impeach him as a witness. Counsel for appellant are correct in the contention that the statement copied as the evidence of the witness Potts is in the form of an affidavit, but the statement of facts does not make it clear as to which party put the affidavit in evidence, but it is probable that it was introduced by appellee, and it is a fact that Potts testified upon the witness stand that so much of that statement as credited him with saying that he knew the alley was there, and had always known it as a public alley, was improperly placed in the document, and was overlooked by him before he signed it. However, the witness Chamberlain, who prepared the affidavit, contradicted Potts' testimony in that regard, and it was for the jury to determine which was correct, and whether or not Potts made the statement incorporated in the affidavit.

Having concluded that the judgment should be affirmed upon the theory of prescription, we deem it unnecessary to discuss at length the questions of dedication and estoppel.

[3] The general rule seems to be that when an individual, acting for himself, sells a portion of a body of land and agrees with the other party that it is bounded by a street or alley, and so describes it in the deed, such purchaser, as against his vendor or those holding under him with notice, will have an easement in the property represented as a street or alley, which easement the courts will protect. Whether or not that rule would apply to sales made by an administrator or other trustee need not be determined in this case, as the judgment can be affirmed without deciding that question.

As stated in our former opinion, we might affirm the judgment in this case because of the incompleteness of the statement of facts. We have not pursued that course, but deem it proper to again call attention to that point and to utter a warning against such unsatisfactory procedure. Not only has the appellant failed to bring to this court all the testimony that was introduced at the trial, but much of the evidence given by witnesses is so stated as to be unintelligible to one who has no other source of information than the statement of facts. In other words, the stenographer who reported the case, in many instances, uses language like this, which is copied in the statement of facts without any further explanation: "There was a house located here (indicating);" "there was a fence there (indicating)." To the jury and attorneys engaged in the trial of the case and seeing the witness point to a particular place upon a map or sketch, that testimony may have been both intelligible and important; but, considering the manner in which it appears in the statement of facts, it is unintelligible and meaningless to us. This is not the first instance in which this procedure has occurred. This evil seems to be growing; and, unless it is corrected, this court will feel justified in disregarding such incomplete statements of fact.

The motion for rehearing has received careful consideration, and our conclusion is that it should be overruled; and it is so ordered.